So Ordered.

Signed this 29 day of March, 2022.

_____

Diane Davis
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
_____

In re:

STEPHANIE MAZLOOM,                                      Chapter 7
                                                        Case No.: 18-60206-06

                                  *Debtor.*
_____

In re:

STEPHANIE MAZLOOM, on behalf of herself
and all others similarly situated,                      Adv. Pro. No.: 20-80033-6

                                  *Plaintiffs*,

v.

NAVIENT SOLUTIONS, LLC and
NAVIENT CREDIT FINANCE CORPORATION,


                                  *Defendants*.
_____

1

APPEARANCES:

BOIES SCHILLER FLEXNER LLP
*Attorneys for Plaintiff*
30 South Pearl St., 11th Floor
Albany, New York 12207

GEORGE CARPINELLO, ESQ.
ADAM SHAW, ESQ.

JONES SWANSON HUDDELL &
DASCHBUCH, LLC
*Attorneys for Plaintiff*
601 Poydras Street, Suite 2655
New Orleans, LA 70130

LYNN SWANSON, ESQ.

FISHMAN HAYGOOD LLP
*Attorneys for Plaintiff*
201 St. Charles Avenue, 46th Floor
New Orleans, LA 70170

JASON W. BURGE, ESQ.

McGUIRE WOODS
*Attorneys for Navient Solutions*
1251 Avenue of the Americas, 20th Floor
New York, New York 10020

K. ELIZABETH SIEG, ESQ.
JOSEPH A. FLORCZAK, ESQ.

Honorable Diane Davis, Chief United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

## INTRODUCTION AND PROCEDURAL BACKGROUND

Stephanie Mazloom ("Plaintiff") entered into a loan agreement in order to pay the cost of attending medical school. After receiving a discharge under Chapter 7 of the Bankruptcy Code, Plaintiff brought a motion to reopen and, on her own behalf and all others similarly situated, commenced this adversary proceeding against Navient Solutions, LLC and Navient Credit Finance Corporation ("Defendants") on July 2, 2020 (together, Defendants and Plaintiff are the "Parties"). Plaintiff's complaint contains three counts and seeks, among other things: (a) declaratory relief that Plaintiff's and other putative class members' loans are dischargeable under 11 U.S.C. § 523(a)(8); (b) injunctive relief prohibiting Defendants from continuing to collect on discharged

debts; (c) compensatory and punitive damages and monetary sanctions for violations of the discharge orders and statutory injunction; and (d) restitution and/or disgorgement of funds collected since the discharge orders were entered.[1]

The Parties have filed competing motions for summary judgment. On April 13, 2021, Defendants filed an Initial Motion for Summary Judgment ("Defendants' Summary Judgment Motion") (ECF No. 56). On May 18, 2021, Plaintiff filed her Opposition to Defendant's Initial Summary Judgment Motion and Cross-Motion for Partial Summary Judgment, ("Plaintiff's Motion for Summary Judgment") (ECF No. 76) (together, the "Parties' Summary Judgment Motions"). The Parties' Summary Judgment Motions address the threshold issue of the dischargeability of Plaintiff's debt to Defendants pursuant to § 523(a)(8)(A)(i). As required by Local Bankruptcy Rule 7056-1, the Parties filed: Defendants' Statement of Undisputed Facts in Support of Their Initial Motion for Summary Judgment (ECF No. 56-3); Plaintiff's Counter-Statement of Undisputed Material Facts (ECF No. 75); and Defendants' Responses to Plaintiff's Counter-Statement of Undisputed Material Facts in Support of Her Cross Motion for Summary Judgment (ECF No. 85). The following is based upon consideration of the Parties' written submissions, and arguments made before this Court on June 8, 2021. The Court is not submitting findings of fact and conclusions of law in this matter because Federal Rule of Civil Procedure ("FRCP") 52(a)(3), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure ("FRBP") 7052, does not require such a submission when ruling on a motion for summary judgment.[2]

---

[1] Unless otherwise stated, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, and will hereafter be referred to as "§ (section number)."
[2] *In re Gayety Candy Co.*, 625 B.R. 390, 399 n.5 (Bankr. N.D. Ill. 2021), *citing In re Pers. Communs. Devices, LLC*, 588 B.R. 661, 662 (Bankr. E.D.N.Y. 2018).

As set forth below, the Court finds that neither Party has met their burden to prevail at summary judgment. Therefore, the Court denies the relief sought in both Parties' Summary Judgment Motions.

## JURISDICTIONAL STATEMENT

The Court has jurisdiction over the Parties and subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 1334(a), 1334(b), 157(a), and 157(b)(2)(A), (I), and (O). Venue is proper pursuant to 28 U.S.C. § 1409(a).

## STANDARD OF REVIEW

The Court may enter summary judgment "only if it concludes that there is no genuine dispute as to the material facts and that, based on the undisputed facts, the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see, e.g., Celotex Corp v. Catrett*, 477 U.S. 317, 322-3 (1986); *In re Baker*, 465 B.R. 359, 363 (Bankr. N.D.N.Y. 2012) (same). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine dispute as to a material fact for trial and summary judgment is appropriate." *In re Birnbaum*, 513 B.R. 788, 799 (Bankr. E.D.N.Y. 2014) (citing *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006)).[3]

If the moving party meets its burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the non-moving party "to come forward with evidence sufficient to create a genuine dispute as to a material fact for trial." *In re Khan*, 2014 Bankr. LEXIS 4205 at *17 (Bankr. E.D.N.Y. September 30, 2014). The non-moving party must "do more than

---

[3] In other words, "only when reasonable minds could not differ as to the import of evidence is summary judgment proper." *In re Krautheimer*, 210 B.R. 37, 56 (Bankr. S.D.N.Y. 1997). "It is well settled that on a motion for summary judgment, the court is not empowered to 'try' issues of fact; it can only determine whether there are issues to be tried." *Id., citing American Mfrs. Mut. Ins. Co. v. American Broadcasting-Paramount Theatres, Inc*., 388 F.2d 272, 279 (2d Cir. 1967).

simply show there is some metaphysical doubt as to the material facts." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). A party moving for summary judgment can meet its burden either by producing evidence showing the absence of a genuine issue of material fact, or by pointing out to the Court that there is an absence of evidence supporting one or more essential elements of the non-moving party's case. *In re Krautheimer*, 210 B.R. 37, 56 (Bankr. S.D.N.Y. 1997); *Long Oil Heat, Inc. v. Spencer*, 375 F. Supp. 3d 175, 190 (N.D.N.Y. 2019) (same).

In this proceeding, both Parties have moved for summary judgment to determine whether the Plaintiff's student loan debt is exempt from discharge pursuant to § 523(a)(8)(A)(i). This does not alter the underlying standard for each independent motion for summary judgment. "When faced with cross-motions for summary judgment…the court must consider 'each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law.'" *In re Rood*, 448 B.R. 149, 158 (Bankr. D. Md. 2011) (citing *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)); *In re N-Liquidation, Inc.*, 2018 Bankr. LEXIS 2138 at *10 (Bankr. N.D.N.Y. July 20, 2018) (when considering a cross motion for summary judgment, court must weigh the merits of each motion independently). Cross motions for summary judgment do not require the court to decide the case on the merits. "[T]he court can deny both motions if both parties have failed to meet the burden of establishing that no genuine issues of material fact exist and that they are entitled to judgment as a matter of law." *In re Kogos*, 2010 Bankr. LEXIS 4079 at *9 (Bankr. N.D. Ill. November 30, 2010); *see also Guard Ins. Group v. Reliable Ins. Servs., LLC, Shah Builders, & Carlos Quin De Hurtado*, 2018 U.S. Dist. LEXIS 237072 at *9 (E.D.N.Y. March 20, 2018) (denying both parties' motions for summary judgment); *Sosne v. FDIC*, 2016 (U.S. Dist.

LEXIS 24201 (E.D. Mo. February 29, 2016) (same); *Ohio Cas. Ins. Co. v. Twin City Fire Ins. Co.*,

2018 U.S. Dist. LEXIS 234831 (E.D.N.Y. June 28, 2018) (same).

In an action to determine the dischargeability of a purported student loan debt pursuant to

§ 523(a)(8), the creditor has the initial burden to establish, by a preponderance of the evidence, the

existence of the debt and that the debt is an educational loan within the statute's parameters. *In re

Kashikar*, 567 B.R. 160, 168 (B.A.P. 9th Cir. 2017); *see also Grogan v. Garner*, 498 U.S. 279,

287 (1991). If this burden is met, the burden of production shifts to the debtor, while the creditor

retains the ultimate burden of proof by a preponderance of the evidence. *Grogan*, 498 U.S. at 286.

## FACTS

The following recitation of facts has been drawn from the Parties' Statements and Counter-

Statements of Material Facts, the briefs submitted by the Parties, the hearing held on June 8, 2021,

and other submissions on the Court's docket.

From 2006 through 2008 Plaintiff attended medical school in Antigua and Barbuda.[4]

Plaintiff's Counter-Statement of Undisputed Material Facts 1, ECF No. 85. In order to finance the

cost of her education, in August 2006, Plaintiff obtained a private student loan from Nellie Mae

Bank in the amount of $38,400 ("Private Student Loan"). Defendants' Response to Plaintiff's

Counter-Statement of Undisputed Material Facts 2, ECF No. 84. Nellie Mae Bank was one of the

predecessors-in-interest to defendant Navient Solutions LLC, which has at all relevant times

serviced the Private Student Loan. *Id.* Included in the loan documents signed by Plaintiff was a

promissory note with language stating that "EXCEL Grad Loans…are private education

loans…that complement the Federal Stafford Loan program…" and that her "loan is an educational

---

[4] The Parties differ as to whether Plaintiff attended medical school at Kasturba Medical College or the American
University of Antigua. This dispute is of no moment to the matter currently before the Court.

loan and is made under a program that includes Stafford Loans and other loans and which is funded in part by non-profit organizations, including governmental units, and, therefore, is not dischargeable in bankruptcy."[5] Defendants' Statement of Undisputed Facts 3, ECF No. 56-3. It is uncontested that Navient provides both private loans and Stafford loans, and that Plaintiff's loan was funded entirely with private funds. *Id.* at 2. Plaintiff was not eligible for, and did not receive, a Stafford loan. Plaintiff's Counter-Statement of Undisputed Material Facts 1, ECF No. 85.

In 2014, Defendants created a prospectus to inform students about the different loans offered by Defendants ("Prospectus"). Navient Prospectus, Aug. 25, 2014, ECF No. 87-3. Both Parties, in their submissions, reference to the deposition of Patty Peterson, Defendants' Senior Vice-President of Operations, taken on April 28, 2021, in which Ms. Peterson discussed the nature of the EXCEL Grad Loan Program. Peterson Dep., Apr. 28, 2021, ECF No. 87-1. References were also made to an earlier deposition of Ms. Peterson discussing the same matters in a separate case. Peterson Dep., Dec. 17, 2020, ECF No. 87-2.

On February 21, 2018, Plaintiff filed a petition under Chapter 7 of the Bankruptcy Code. Defendants' Response to Plaintiff's Counter-Statement of Undisputed Material Facts 2, ECF No. 84. Plaintiff scheduled the Private Student Loan in the amount of $38,400, described it as a "student loan" and did not classify it as contingent, unliquidated or disputed. Plaintiff's Counter-Statement of Undisputed Material Facts 7, ECF No. 85. On June 4, 2018, this Court entered its general order discharging all of Plaintiff's properly scheduled debts, excluding those excepted from discharge under § 523(a). *Id.* Defendants received notice of both Plaintiff's bankruptcy case

---

[5] The documentation of the Private Student Loan consists of a student loan application signed by the Plaintiff, in which she attests to the fact that she has read the attached (unsigned) promissory note, which contained no signature line for the borrower. The Parties agree that the Private Student Loan is an "EXCEL Grad Loan."

and this Court's discharge order. Plaintiff's Memorandum of Law in Opposition to Defendants'
Initial Motion for Summary Judgment 2, ECF No. 86.

On June 10, 2020, Plaintiff requested that her Chapter 7 case be reopened to bring the
current adversary proceeding against Defendants. *Id.* at 3. The Court granted the motion on June
24, 2020, and Plaintiff commenced this adversary proceeding on July 2, 2020. *Id.* Plaintiff's
complaint does not allege that the Private Student Loan caused Plaintiff undue hardship. Rather,
the Parties' Summary Judgment Motions now before the Court concern only whether the Private
Student Loan is dischargeable pursuant to § 523(a)(8)(A)(i).

## **DISCUSSION**

Defendants' Motion for Summary Judgment seeks a determination that Plaintiff's Private
Student Loan is excepted from discharge pursuant to § 523(a)(8)(A)(i). Section 523(a)(8) restricts
the dischargeability of "four categories of educational debt from discharge," namely:
(i) educational benefit overpayments or loans made, insured, or guaranteed by a governmental
unit; (ii) educational benefit overpayments or loans made under any program partially or fully
funded by a governmental unit or nonprofit institution; (iii) funds received as an educational
benefit, scholarship or stipend; or (iv) qualified educational loans as defined in § 221(d)(1) of the
Internal Revenue Code. *In re Golden*, 596 B.R. 239, 257 (Bankr. E.D.N.Y. 2019). Section
523(a)(8) is written disjunctively, meaning a loan need only fall within one of these four categories
to be non-dischargeable.

Here, the Court is asked to determine whether the debt at issue is an educational loan under
§ 523(a)(8)(A)(i), which excepts from discharge "an educational benefit overpayment or loan
made, insured, or guaranteed by a governmental unit, or made under any program funded in whole
or in part by a governmental unit or nonprofit institution." Defendants assert that the loan issued

to Plaintiff is excepted from discharge under § 523(a)(8)(A)(i) because the Private Student Loan was made under Defendants' EXCEL Grad Loan Program, which is itself funded in part by federal Stafford loans. It is uncontested that the Private Student Loan was made for the purpose of financing Plaintiff's attendance at medical school, and thus was an educational loan within the meaning of § 523(a)(8) which would make it nondischargeable like Defendants argue. *See In re Page*, 592 B.R. 334, 336 (B.A.P. 8th Cir. 2018) (courts look to the purpose of a loan to determine if it is educational). For Defendants to prevail on a motion for summary judgment, however, they must also establish that the Private Student Loan was made under a program funded in part by a governmental unit. Defendants fail to demonstrate this for the following reasons.

Because the primary purpose of the bankruptcy discharge is to provide a fresh start to the honest but unfortunate debtor, courts have long recognized that exceptions to discharge, including § 523(a)(8)(A)(i), must be narrowly construed against the creditor. *In re Campbell*, 547 B.R. 49, 54 (Bankr. E.D.N.Y. 2016) (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998)). It is also widely accepted that the purpose of § 523(a)(8) is to "preserve the financial integrity of educational loan programs." *In re Hammarstrom*, 95 B.R. 160, 163 (Bankr. N.D. Cal. 1989). To accomplish this goal, § 523(a)(8) limits "the instances in which such [student loan] obligations can be discharged in bankruptcy." *Id.* (citing 124 Cong. Rec. 1791-2 (1978) (statement of Rep. Allen Ertel)). As stated by another court, "[t]he legislative history clearly bears out that the broad purpose of the provision was 'to keep our student loan programs intact.'" *In re Karben*, 201 B.R. 681, 684 (Bankr. S.D.N.Y. 1996) (citing 124 Cong. Rec. 1791-2 (1978) (statement of Rep. Ertel)). More specifically, Congress was concerned with "safeguarding the financial integrity of governmental entities and nonprofit institutions that participate in educational loan programs." 4 Collier on Bankruptcy ¶ 523.14[1] (Richard Levin & Henry J. Sommer eds., 16th ed.). Notably, finding that

Plaintiff's Private Student Loan was discharged would not adversely affect the financial integrity

of the Stafford loan program, or that of any nonprofit institution. This Court is mindful of these

underlying purposes of § 523(a)(8) when evaluating both Parties' Motions for Summary Judgment.

Defendants' justification for the claim that the Private Student Loan was part of a program

funded in part by a governmental unit is largely based on the promissory note signed by Plaintiff.

In pertinent part, the promissory note states that:

> 'EXCEL Grad Loans are …private education loans… that complement the
> Federal Stafford Loan program…[t]hey are designed for graduate and
> professional students who have borrowed their maximum Federal Student Loan
> amounts but still have remaining college expenses.'

Defendants argue that because Plaintiff signed the promissory note, she 'certified' her

understanding of the note's statement that her "loan is an educational loan and is made under a

program that includes Stafford Loans, funded in part by nonprofit organizations, including

governmental units," and the Court should therefore find that the loan was not discharged in this

case.

The promissory note, however, is unavailing at this stage, and without additional evidence

to meaningfully substantiate the language in the promissory note, it is little more than a tautology.

If lenders could simply aver that a private loan was a part of a program involving a nonprofit or

governmental unit and have that statement serve as the proof of the program's existence, every

lender would do so. Given the inherent flaws of such a system, at the summary judgment stage of

litigation, boilerplate language in a promissory note is not dispositive with respect to a § 523(a)(8)

determination. *See, e.g.*, *In re Holquin*, 609 B.R. 878, 888 (Bankr. D. N.M. 2019) (boilerplate

language of loan documents cannot prove the actual existence of a loan guarantee); *In re Greer-

Allen*, 602 B.R. 831, 838 (Bankr. D. Mass. 2019) (language in loan documents is not, standing

alone, sufficient to prove existence of nonprofit guarantees); *In re Wiley*, 579 B.R. 1, 7 (Bankr. D.

Me. 2017) (language in pre-petition loan agreements citing to § 523(a)(8) is not enough to prevail on summary judgment and does not mandate an inference that the loans were made under a program funded by a nonprofit institution); *In re Palmer*, 2021 Bankr. LEXIS 834 at *28-29 (Bankr. N.D. Ohio March 31, 2021) (prepetition stipulation/credit agreement stating that loan made pursuant to applicable subsections of § 523(a)(8) is "not binding on this [c]ourt"). The court in *Palmer* goes as far as to suggest that such boilerplate language regarding § 523(a)(8) may even be contrary to public policy. *Id.*

Courts are rightfully concerned that lenders would consistently take advantage of unsophisticated or desperate debtors by including pre-petition waivers of dischargeability in all loan agreements, thus vitiating one of the core protections of the bankruptcy process. This Court, however, need not reach this issue to find that such boilerplate language in a promissory note alone cannot carry the day on summary judgment. *See, e.g., In re Wiley*, 579 B.R. at 7 ("pre-printed" portions of pre-petition loan agreements purporting to control application of § 523(a)(8) are insufficient to prevail on summary judgment, and do not mandate an inference that the loans were "made under a program funded by a nonprofit institution."). Moreover, the *Wiley* court denied summary judgment to the private lender even though there was "some information in the record that indicate[d] that the Loans *may* have been extended under a program funded by a nonprofit institution." *In re Wiley*, 579 B.R. at 7 (emphasis in original). When courts acknowledge and credit boilerplate language like that found in Defendants' promissory note, it is almost always accompanied by other evidence of the existence of a program funded in whole or in part by a nonprofit or governmental unit. This evidence takes the boilerplate language out of the realm of tautology and provides a measure of substantiality with regard to the funding of the program.

Defendants rely heavily upon *In re Drumm*, 329 B.R. 23 (Bankr. W.D. Pa. 2005) as the rare case where the court credited a promissory note as establishing the existence of a program funded by a nonprofit without supporting evidence of substantiality. The factual record of *Drumm*, however, undermines any support it may have provided to Defendants. The parties in *Drumm* stipulated that the lender "had available in its 'program' loans that were funded by both private for-profit entities as well as loans funded by governmental units." *Id.* at 27. Moreover, the nonprofit foundation in *Drumm* established and maintained a reserve account for Drumm's loans, providing more proof of a program extrinsic to the promissory note than Defendants' have put forward to prove the existence of the EXCEL Grad Loan Program. *Id.* at 29.

Apart from Defendants promissory note, the only other evidence they provide in support of their contention that the Private Student Loan was part of a funded program are the depositions of Patricia Peterson. Defendants rely upon conclusory statements made by Ms. Peterson, a senior executive and longtime employee of Defendants, that the EXCEL Grad Loan Program is made up of both federal Stafford loans and private loans. Ms. Peterson, however, stated that for this case the only document she reviewed was the promissory note created by her employer. Peterson Dep. 14:13-15:7, Apr. 28, 2021, ECF No. 87-1. Self-interested statements such as these, without supporting documentation, do not establish that there is no genuine dispute as to the material facts surrounding this issue. *In re Holgiun*, 609 B.R. 878, 886-887 (Bankr. D. N.M. 2019) (finding an affidavit that an employee had personal knowledge that a nonprofit had paid for defaulted loans pursuant to a guaranty agreement was not sufficient at summary judgment given the lack of corroborating documentation). Defendants' reliance on their own statements to establish the existence of a funded program within the meaning of § 523(a)(8)(A)(i) must fail.

12

Courts around the country have accepted a broad range of evidence to establish that a loan was made under a program funded in whole or in part by a nonprofit or governmental unit. The Second Circuit has stated that the nonprofit or government entity must have provided "any meaningful contribution" to the program to establish funding under the terms of § 523(a)(8)(A)(i). *In re O'Brien*, 419 F.3d 104, 105 (2d Cir. 2005). In *O'Brien*, it was sufficient that the nonprofit had guaranteed the loans, which meant it "was clearly devoting some of its financial resources to supporting the program." *Id.* at 106. While the existence of a guaranty agreement between the lender and the nonprofit is often satisfactory, evidence that the nonprofit has made good on their word by performing as the guarantor when borrowers defaulted is likewise clear proof of a funded program within the meaning of § 523(a)(8)(A)(i). *See, e.g., In re Kidd*, 458 B.R. 612 (Bankr. N.D. Ga. 2011). It is this concrete relationship between the lender and the nonprofit that is necessary to find that a funded program exists. Further, when the nonprofit maintains a separate fund for potential payments on defaulted loans, it can establish the requisite meaningful contribution. *See, e.g., In re Taratuska*, 2008 U.S. Dist. LEXIS 93206 at *17-18 (D. Mass. August 25, 2008) (finding § 523(a)(8)(A)(i) requirement to be met where the nonprofit maintained money in segregated reserves to support its guaranty obligations, thus devoting financial resources to the loan program). Elsewhere courts have looked for "an integrated effort to provide a streamlined method" for providing loans as evidence of a funded program, and considered "the extent and nature of that entity's involvement with the administration of the program." *In re Rojas*, 2018 Bankr. LEXIS 774 at *7-8 (Bankr. E.D.N.Y. March 18, 2018). Some courts have considered it determinative that the actions of the nonprofit or government entity acted as a type of *sine qua non*, where the loans would not have been made but for the involvement of the nonprofit. *See, e.g., In re Medina*, 2020 Bankr. LEXIS 2459 at *10-11 (Bankr. S.D. Cal. 2020) (finding guaranty critical to program due

13

to fact that loans would not have been made but for nonprofit's guaranty to purchase defaulted loans).

Unlike each of the above cases, Defendants offer no corroborating evidence to establish the existence of a funded program apart from statements given by their own employees and the Prospectus. Defendants point neither to any meaningful contribution by the Stafford loan program, nor do they offer evidence that the federal government devoted any resources to the program. The mere availability of Stafford loans does not serve as evidence that the EXCEL Grad Loan Program in fact was funded by the same. To find otherwise would automatically qualify any student loan program as exempt from discharge. Because there is no evidence that the federal government was involved with the EXCEL Grad Loan Program, Defendants are similarly unable to establish that a governmental entity contributed to the administration of the program, maintained any separate fund related to the program, or was integrated with the program in any way. Finally, there is no evidence that the involvement of a governmental entity was a *sine qua non* to the creation of the loans. Any statement from Defendants that they would not have made the loans if they had not believed a program existed would invite every imaginable loan program into the protections of § 523(a)(8) without concomitant meaningful requirements.

Defendants ask the Court to follow the *Mader* decision in which the district court concluded that the private lender's program met the § 523(a)(8)(A)(i) requirement because it was made under a program that also made Stafford loans. *Mader v. Experian Info. Sols., LLC*, 2020 U.S. Dist. LEXIS 132073 (S.D.N.Y. July 24, 2020). In *Mader*, the court relied upon the promissory note itself, as well as an affidavit provided by an executive with Navient. In doing so, it concluded that because the promissory note contained language that loan at issue was "made under a program that also makes Stafford Loans…" the loan was therefore "made under a program funded…in part

by a governmental unit or nonprofit institution" as required by § 523(a)(8)(A)(i). *Id.* at *6-7.[6] Relying upon *O'Brien*, the *Mader* court noted that in affirming the district court, the Second Circuit found that the loan was non-dischargeable under § 523(a)(8)(A)(i). *Id.* at *5-6. In doing so, the *Mader* court explained that the subsection did "not require that the nonprofit fund the loan for that section to be applicable. Rather, § 523(a)(8) requires only that the loan 'was made under any program funded in whole or in part by [a governmental unit or nonprofit institution]." *Id.* at *3 (quoting *In re O'Brien*, 419 F.3d 104, 106 (2d Cir. 2005)).

This Court respectfully declines to follow the *Mader* decision because it finds the *Mader* court's reliance on *O'Brien* to be misplaced. As discussed above, *O'Brien* articulated that the "meaningful contribution" test determines when a program was properly funded within the meaning of § 523(a)(8)(A)(i). *In re O'Brien*, 419 F.3d at 105. The court in *O'Brien*, however, felt that the program in question satisfied this test not because of a promissory note, but because of the uncontested fact that the nonprofit in question guaranteed every loan in the program. *Id.* at 106. As such, *O'Brien* does not absolve a party from its obligation to provide reliable, concrete evidence of a funded program's existence in order to succeed on summary judgment. In fact, multiple courts have used the *O'Brien* analysis to rule against, rather than in favor of, creditors requesting to have student loans deemed excepted from discharge pursuant to § 523(a)(8)(A)(i), because of a lack of such reliable evidence. For example, in *Holquin v. Nat'l Collegiate Student Loan Trust 2006-2* (*In re Holquin*), 609 B.R. 878, 886-87 (Bankr. D. N.M. 2019), the court denied the lender's summary

---

[6] The *Mader* court credited the testimony of a senior Navient employee who testified to having personal knowledge that the EXCEL Grad Loan Program was a part of a program that made loans funded or guaranteed by the government. *In re Mader*, 2020 U.S. Dist. LEXIS 132073 at *8 (S.D.N.Y. July 24, 2020). While still quite insubstantial, this is still more evidence than Defendants have provided to this Court. No current or past employee of Defendants has claimed to have personal knowledge of any federal funding of the EXCEL Grad Loan Program in any of the materials submitted to this Court. The *Mader* court stated that the plaintiff's arguments "cannot be accepted in light of Defendant's admissible evidence to the contrary." *Id.* at *9.

judgment motion where there was an agreement between the nonprofit and the private lender, but where there was no evidence that it was still in effect at the time the debtor incurred his student loans. The court also found that without actual supporting documentation of the agreement, the lender's affidavit as to its existence was ineffective at summary judgment to establish that the nonprofit committed any monetary resources to fund the loan program. Similarly, in *In re Palmer*, 2021 Bankr. LEXIS 834 at *30 (Bankr. N.D. Ohio, March 31, 2021) the court held that the defendant's mere assertion that a nonprofit guaranteed debtor's student loan debt to be insufficient for purposes of § 523(a)(8)(A)(i), in the absence of evidence of an actual written agreement between said nonprofit and the private lender.

The *Mader* decision also relies heavily upon *In re Jean Baptiste,* 584 B.R. 574 (Bankr. E.D.N.Y. 2018), which held that a private student loan was non-dischargeable under § 523(a)(8)(A)(i) "because it was made under a program funded in part by non-profit institutions." *Mader*, 2020 U.S. Dist. LEXIS 132073 at *7 (citing *In re Jean Baptiste*, 584 B.R. at 584). The facts of *Jean Baptiste*, however, are distinguishable from the current proceeding sufficient to render it inapposite. In *Jean Baptiste*, defendant Access Group, Inc. was itself a nonprofit entity operating solely for charitable and educational purposes. *Jean Baptiste*, 584 B.R. at 578. Through the Access Group National Loan Program, it offered both federally guaranteed and private, guaranteed education loans. *Id.* The loans in this program were financed by National City Bank through the (nonprofit) Access Loan Program. *Id.* Pursuant to an ongoing Commitment and Loan Sale Agreement between Access and National City, the bank agreed to sell to Access all student loans the bank originated pursuant to the Access Loan Program. *Id.* The "Access Loans" were "originated, marketed, guaranteed, funded and subsequently purchased by Access." *Id.* at 578-79.

16

In *Jean Baptiste*, there was a formal, written, and legally binding Commitment and Loan Sale Agreement between the nonprofit Access and the private loan funder National City. *Id.* This formalized agreement was clearly sufficient to satisfy the "meaningful contribution" test necessary to bring a program under the aegis of § 523(a)(8)(A)(i) sufficient to grant the defendants' summary judgment motion. The court in *In re Golden* relied upon a similar agreement when interpreting *O'Brien* to support its determination that a student loan was exempt from discharge under § 523(a)(8)(A)(i). *See In re Golden*, 596 B.R. 239, 266 (Bankr. E.D.N.Y. 2019) (citing *In re Page*, 592 B.R. 334, 337 (B.A.P. 8th Cir. 2018)). Unlike *O'Brien* and its progeny, this Court has no written evidence of participation by a nonprofit or governmental unit before it, meaningful or otherwise. Unlike the courts in *Jean Baptiste* and *Golden*, this Court has not been provided with reliable evidence of a funded program, nor given comparable evidence. A dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law[.]" *Id.* The moving party has the burden of demonstrating the absence of a genuine dispute as to any material fact, and "all of the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *In re Birnbaum*, 512 B.R. 788, 799 (Bankr. E.D.N.Y. 2014) (citing *In re Allou Distribs., Inc.*, 446 B.R. 32, 49 (Bankr. E.D.N.Y. 2011)). Because Defendants have failed to meet their burden of showing the § 523(a)(8)(A)(i) exception to discharge applies to Plaintiff's Private Student Loan, Defendants' Motion for Summary Judgment at this stage must be denied.

Turning now to Plaintiff's Motion for Summary Judgment, Plaintiff seeks a determination that the Private Student Loan, as a matter of law, was not funded or guaranteed by a governmental or nonprofit entity as required by the terms of § 523(a)(8)(A)(i) and so was discharged. Plaintiff's

Motion for Summary Judgment is evaluated separately from Defendants' Motion for Summary Judgment, and is subject to the same standard of review and legal framework outlined above. To prevail at this stage, Plaintiff must establish that there is no genuine dispute as to any material fact that the Private Student Loan was not part of a program funded in part by Stafford loans.

Determining whether the Private Student Loan was made under a "program funded in whole or in part by a governmental unit" within the meaning of § 523(a)(8)(A)(i) requires not only a clear understanding of the relevant private loan program, but of the criteria of the term "program" more generally. Section 523(a)(8), however, does not define the term "program." *See In re Pilcher*, 149 B.R. 595, 598 (B.A.P. 9th Cir. 1993). Caselaw is similarly devoid of a clear definition of program, as that term is used in § 523(a)(8)(A)(i). "[W]hile scores of published opinions discuss § 523(a)(8) dischargeability, [there is no case that] defin[es] the parameters of [the term] program." *See In re Greer-Allen*, 602 B.R. 832, 836 n.2 (Bankr. D. Mass. 2019). Without an accepted understanding of what constitutes a program, Plaintiff faces an uphill battle of establishing that there is no genuine dispute as to whether the Private Student Loan fell inside or outside a governmental or nonprofit program in this case.

The few cases addressing the term "program" reference the legislative history of § 523(a)(8), alongside the statute's broad language. The use of the modifier "any" when describing programs funded in whole or in part by a governmental unit that fall within § 523(a)(8)(A)(i) "suggests a broad definition." *Pilcher*, 149 B.R. at 598. A review of the "legislative history would suggest that Congress intended an inclusive reading," especially in light of the fact that § 523(a)(8) "was amended three times to expand the scope of coverage." *Id.* The primary sponsor of § 523(a)(8), Representative Ertel, spoke at length about the need to "keep our student loan programs intact" by preventing individuals from discharging student loans in bankruptcies and

18

draining government funded resources, thus "penalizing students who are coming along through the system." *In re Hammarstrom*, 95 B.R. 160, 163-64 (Bankr. N.D. Cal. 1989), (citing 124 Cong. Rec. 1791 (1978) (statement of Rep. Ertel)). Congress expressed similar concern that recent graduates with student loans and no assets could obtain a discharge, and subsequently "enjoy the higher earning power the loans have made possible without the financial burden that repayment entails." *In re Renshaw*, 222 F.3d 82 (2d Cir. 2000). These concerns favor a broad reading of § 523(a)(8) that would except most student loans from discharge and preserve the financial integrity of the system by preventing recent graduates from manipulating the system unfairly. Given the undeniably undefined contours of the term "program," combined with the seemingly broad scope of § 523(a)(8), declaring Plaintiff's loan as discharged is poorly suited for summary judgment at this stage.

Plaintiff attempts to use the definition of "student loan program" as that term is used in the context of § 525 to bolster their interpretation of § 523(a)(8).[7] This does nothing to support Plaintiff's argument. Section 525 simply defines a "student loan program" as "any program operated under Title IV of the Higher Education Act of 1965." 11 U.S.C. § 525. The Bankruptcy Code's reference to Title IV is not referenced in § 523(a)(8)(A)(i) and does not clarify the meaning of the term "program" as that term is used in § 523(a)(8). Section 525 is concerned with prohibiting

---

[7] Section 11 U.S.C. 525 provides, in relevant part, that:

> (c) (1) A governmental unit that operates a student grant or loan program and a person engaged in a business that includes the making of loans guaranteed or insured under a student loan program may not deny a student grant, loan, loan guarantee, or loan insurance to a person that is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, or another person with whom the debtor or bankrupt has been associated, because the debtor or bankrupt is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of a case under this title or during the pendency of the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.
> (2) In this section, "student loan program" means any program operated under title IV of the Higher Education Act of 1965 or a similar program operated under State or local law.

discrimination in the issuance of government loans and is concerned with defining government funded student loans in that context. The maxim *expressio unius est exclusio alterius* cautions that the "mention of one impliedly excludes others." *Green v. United States*, 79 F.3d 1348, 1355 (2d Cir. 1996). Additionally, the presumption of consistent usage and meaningful variation "suggest[s] that the presence of [a phrase] applicable to one [term] makes clear that the [phrase's] omission elsewhere was deliberate." *United States v. Zuckerman*, 897 F.3d 423, 431 (2d Cir. 2018) (internal quotation marks omitted) (citing *Novella v. Westchester Cty.*, 661 F.3d 128, 142 (2d Cir. 2011)). Applying these canons of construction, the presence of a clear definition of "student loan program" in one section of the Bankruptcy Code that is explicitly omitted in another section discussing the same term in a distinct context indicates that Congress did not intend for the same definition to apply in both sections. Finally, Defendants have never argued that the Private Student Loan is itself a government loan, only that it is a part of a program that complements government loans. For these reasons, Plaintiff's reliance on § 525 is misplaced.

Even if the exact definition of program could be ascertained, Plaintiff provides too little information about the specifics of Defendants' program to satisfactorily establish that the Private Student Loan issued by Defendants in 2006 falls outside of § 523(a)(8)(A)(i)'s parameters and was in fact discharged. Plaintiff, like Defendants, relies heavily upon Defendants' Prospectus, dated August 25, 2014, as evidence that the EXCEL Grad Loan Program did not contain Stafford loans. Specifically, Plaintiff points to the separate descriptions of the terms and conditions of each type of loan, as well as separate appendices for each, as evidence that these loans were considered and treated as distinct entities. Plaintiff's Memorandum of Law in Opposition to Defendants' Initial Motion for Summary Judgment 13-14, ECF No. 86. Plaintiff also emphasizes that the Prospectus' statement that "EXCEL Loans [are] funded by several commercial banks" and the program is "not

guaranteed by any federal guarantor…." Plaintiff's Memorandum of Law in Opposition to Defendants' Initial Motion for Summary Judgment 14, ECF No. 86. This Court is unwilling to credit the boilerplate language in the Prospectus without accompanying documentation. Furthermore, whatever value it might have added to Plaintiff's argument is obviated by its lack of temporal connection to the Private Student Loan at issue here. No matter how rich in detail, this Prospectus, written in 2014, tells this Court nothing about the Private Student Loan taken out by Plaintiff in 2006. Without direct evidence that the terms of the 2014 Prospectus were in effect at the time the loan was secured in 2006, the Prospectus cannot serve as evidence that the Private Student Loan was made outside of a program funded in whole or in part by a governmental unit. *See In re Holguin*, 609 B.R. 878, 887-88 (Bankr. D. N.M. 2019) (refusing to credit evidence that a guaranty agreement was in effect in the past as evidence that the agreement was in effect later in time).

Plaintiff asserts that the two depositions taken of Ms. Peterson are replete with evidence that the EXCEL Grad Loan Program was funded entirely by private sources. This argument, however, relies upon a selective and narrow reading of Ms. Peterson's words, and repeatedly conflates the EXCEL Grad Loan Program with the loans that constitute that program. Plaintiff states that Ms. Peterson "testified that the EXCEL Grad Loan Program has always been an entirely private loan program with absolutely no federal funding of any kind." Plaintiff's Memorandum of Law in Opposition to Defendants' Initial Motion for Summary Judgment 11, ECF No. 86. Yet Plaintiff's basis for this claim is merely Ms. Peterson's statement that "EXCEL loans use private lenders." Peterson Dep. 116:23-118:17, Apr. 28, 2021, ECF No. 87-1. Ms. Peterson is stating her knowledge of the EXCEL Grad Loan, which Defendants claim is just one part of the EXCEL Grad Loan Program alongside federal Stafford loans. When Plaintiff's attorney asked Ms. Peterson

"[j]ust to be clear, there's no federal funding or federal guarantees involved in the EXCEL programs, at all," she was careful to specify in her response "[n]ot for the EXCEL loan itself, no." Peterson Dep. 89:24-90:6, Dec. 17, 2020, ECF No. 87-2. Plaintiff, throughout their arguments, has attempted to erase this distinction between the program, and the loans within the program. There is nothing within the depositions of Ms. Peterson to support their contention.

Plaintiff argues that the EXCEL Grad Loan Program does not issue Stafford loans, and emphasizes Ms. Peterson's agreement with this fact. Peterson Dep. 118:15-19, Apr. 28, 2021, ECF No. 87-1. Nowhere, however, do Defendants contest this matter, and both Parties are in agreement that Stafford loans are issued and guaranteed by the federal government. Hearing on Motion for Summary Judgment 17:13-14, June 8, 2021, ECF No. 91. Once again, Plaintiff mischaracterizes a dispute about the loan program as one about the loans within that program. Defendants maintain that the EXCEL Grad Loan Program is funded in part by a governmental unit, but readily admit the EXCEL Grad Loan is entirely privately funded, and the Stafford loan is entirely government funded.

Plaintiff claims that Ms. Peterson admitted that "associating the private EXCEL Grad Loan with the separate Federal Stafford loan was merely a 'marketing channel' used by Navient to induce borrowers" to take out private loans. Plaintiff's Memorandum of Law in Opposition to Defendants' Initial Motion for Summary Judgment 12, ECF No. 86. While Ms. Peterson did acknowledge that she had "seen that written," she subsequently denied any personal knowledge of Defendants' marketing strategies when she testified "I don't know. I don't know the marketing roles." Peterson Dep. 95:13-96:2, Dec. 17, 2020, ECF No. 87-2. Ms. Peterson as a Senior Vice-President of Operations made clear that she was not involved with the marketing of EXCEL Grad Loans. Even if Plaintiff could establish that Defendants used the bundling of private and Stafford

loans for marketing purposes, that would not establish a program funded in whole or part by a governmental unit did not exist. The same information can have multiple purposes.

Plaintiff focuses on establishing that there is an absence of evidence supporting one or more essential elements of the non-moving party's case. However, Ms. Peterson's testimony is lacking as it likewise is without supporting documentation that the Private Student Loan agreement was not part of a program. As such, it is ineffective at summary judgment to establish that the government did not commit any monetary resources to fund the EXCEL Grad Loan Program. Plaintiff has not shown the absence of a genuine issue of material fact in their Motion for Summary Judgment demonstrating that Plaintiff's Private Student Loan was not part of a program funded in part by a governmental unit. Consequently, Plaintiff's Motion for Summary Judgment must be denied.

## **CONCLUSION**

For the forgoing reasons, the motions for summary judgment filed by the Parties will be denied and a pretrial scheduled to determine what additional discovery is necessary before trial.

Accordingly, it is hereby

ORDERED, that Defendants Navient Solutions LLC's and Navient Credit Finance Corporation's Initial Motion for Summary Judgment is Denied; and it is further

ORDERED, that Plaintiff Stephanie Mazloom's Motion for Summary Judgment is Denied; and it is further

ORDERED, that the Parties are directed to appear at a Pretrial conference to consider further scheduling of discovery on April 26th, 2022, at 1:00 in the afternoon.

###