So Ordered.

Signed this 26 day of January, 2023.



_____

Diane Davis
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
_____

In re:

STEPHANIE MAZLOOM,                          Chapter 7
                                            Case No.: 18-60206-06

                              *Debtor*.

_____


STEPHANIE MAZLOOM, on behalf of herself
and all others similarly situated,          Adv. Pro. No.: 20-80033-6

                              *Plaintiffs*,

v.

NAVIENT SOLUTIONS, LLC and
NAVIENT CREDIT FINANCE CORPORATION,

                              *Defendants*.

_____

1

APPEARANCES:

BOIES SCHILLER FLEXNER LLP                    GEORGE CARPINELLO, ESQ.
*Attorneys for Plaintiff*                                ADAM SHAW, ESQ.
30 South Pearl Street, 11th Floor
Albany, NY 12207

JONES SWANSON HUDDELL &                     LYNN SWANSON, ESQ.
DASCHBUCH, LLC
*Attorneys for Plaintiff*
601 Poydras Street, Suite 2655
New Orleans, LA 70130

FISHMAN HAYGOOD LLP                         JASON W. BURGE, ESQ.
*Attorneys for Plaintiff*
201 St. Charles Avenue, 46th Floor
New Orleans, LA 70170

McGUIRE WOODS                               K. ELIZABETH SIEG, ESQ.
*Attorneys for Defendants*                             JOSEPH A. FLORCZAK, ESQ.
1251 Avenue of the Americas, 20th Floor
New York, NY 10020

Honorable Diane Davis, Chief United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

## INTRODUCTION AND PROCEDURAL BACKGROUND

In this adversary proceeding, Stephanie Mazloom ("Plaintiff") seeks a determination that

her debt to Navient Solutions, LLC and Navient Credit Finance Corporation ("Defendants") falls

outside of the exception to discharge for student loans outlined in 11 U.S.C. § 523(a)(8).[1]

Defendants seek the opposing determination, that Plaintiff's debt is a non-dischargeable debt

pursuant to the same Code section. The debt in question was a loan taken out by Plaintiff to attend

medical school. There are two essential disputes which this Court must resolve before it can

establish whether the loan in question is non-dischargeable. First, was the loan part of a 'program'

---

[1] Unless otherwise stated, all statutory references are to sections of the United States Bankruptcy Code (hereinafter, the "Code"), 11 U.S.C. § 101 *et seq.*, and will hereafter be referred to as "§ (section number)."

funded in part by the government as that term is used in 11 U.S.C. § 523(a)(8), and second, was the loan procured for the purpose of attending a Title IV institution. The parties agree on the relevant facts, but advocate for applications of the law which create divergent results, thus making this issue well-suited for summary judgment.

Both parties previously moved for summary judgment on this issue. The Court denied both motions in a prior opinion in light of the underdeveloped record at that time. (ECF No. 108.) Accordingly, the Court will assume some degree of familiarity with the procedural history of the case through its prior decision. Following additional discovery and briefing, the parties once again filed cross-motions for summary judgment, each arguing for judgment as a matter of law under both §§ 523(a)(8)(A)(i) and 523(a)(8)(B). Plaintiff filed her Renewed Motion for Summary Judgment on September 13, 2022 (ECF No. 138), followed by Defendants' Cross-Motion for Summary Judgment on October 4, 2022 (ECF No. 150). Plaintiff filed her reply brief on October 18, 2022 (ECF No. 155), and Defendants followed with their surreply on October 24, 2022 (ECF No. 156). The Court then held a hearing on October 25, 2022, after which the matter was taken under submission. The Court is not submitting findings of fact and conclusions of law in this matter, since Federal Rule of Civil Procedure ("FRCP") 52(a)(3), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure ("FRBP") 7052, does not require such a submission when ruling on a motion for summary judgment.[2]

Because the Court finds that Plaintiff's loan is excepted from discharge as a "qualified education loan" under § 523(a)(8)(B), the Court's analysis would normally end here. However, because this case is a putative class action, the Court finds sufficient reason to consider § 523(a)(8)(a)(i), and holds that Plaintiff's debt was not made as part of a program funded in whole

---

[2] *In re Gayety Candy Co.*, 625 B.R. 390, 399 n.5 (Bankr. N.D. Ill. 2021), *citing In re Pers. Communs. Devices, LLC*, 588 B.R. 661, 662 (Bankr. E.D.N.Y. 2018).

or part by a governmental unit. Accordingly, the Court grants Plaintiff's Motion for Summary Judgment as to § 523(a)(8)(A)(i), and grants Defendants' Motion for Summary Judgment as to § 523(a)(8)(B).

## JURISDICTIONAL STATEMENT

The Court has jurisdiction over the Parties and subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 1334(a), 1334(b), 157(a), and 157(b)(2)(A), (I), and (O). Venue is proper pursuant to 28 U.S.C. § 1409(a).

## STANDARD OF REVIEW

The standard of review is unchanged from the Court's previous decision. *Mazloom v. Navient Sols., LLC (In re Mazloom)*, 2022 Bankr. LEXIS 806 (Bankr. N.D.N.Y. Mar. 29, 2022). The Court may enter summary judgment only if it concludes that there is no genuine dispute as to the material facts and that, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see, e.g., Celotex Corp v. Catrett*, 477 U.S. 317, 322-3 (1986); *In re Baker*, 465 B.R. 359, 363 (Bankr. N.D.N.Y. 2012) (same). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine dispute as to a material fact for trial and summary judgment is appropriate." *In re Birnbaum*, 513 B.R. 788, 799 (Bankr. E.D.N.Y. 2014) (citing *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006)).[3]

If the moving party meets its burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the non-moving party "to come forward with evidence

---

[3] In other words, "only when reasonable minds could not differ as to the import of evidence is summary judgment proper." *In re Krautheimer*, 210 B.R. 37, 56 (Bankr. S.D.N.Y. 1997). "It is well settled that on a motion for summary judgment, the court is not empowered to 'try' issues of fact; it can only determine whether there are issues to be tried." *Id.* (citing *American Mfrs. Mut. Ins. Co. v. American Broadcasting-Paramount Theatres, Inc*., 388 F.2d 272, 279 (2d Cir. 1967)).

sufficient to create a genuine dispute as to a material fact for trial." *In re Khan*, 2014 Bankr. LEXIS 4205 at *17 (Bankr. E.D.N.Y. Sept. 30, 2014). The non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). A party moving for summary judgment can meet its burden either by producing evidence showing the absence of a genuine issue of material fact, or by pointing out to the Court that there is an absence of evidence supporting one or more essential elements of the non-moving party's case. *In re Krautheimer*, 210 B.R. 37, 56 (Bankr. S.D.N.Y. 1997); *Long Oil Heat, Inc. v. Spencer*, 375 F. Supp. 3d 175, 190 (N.D.N.Y. 2019) (same).

In this proceeding, both Parties have moved for summary judgment to determine whether the Plaintiff's student loan debt is excepted from discharge pursuant to §§ 523(a)(8)(A)(i) and 523(a)(8)(B). This does not alter the underlying standard for each summary judgment motion. "When faced with cross-motions for summary judgment…the court must consider 'each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law.'" *In re Rood*, 448 B.R. 149, 158 (Bankr. D. Md. 2011) (citing *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)); *In re N-Liquidation, Inc.*, 2018 Bankr. LEXIS 2138 at *10 (Bankr. N.D.N.Y. July 20, 2018) (when considering a cross motion for summary judgment, court must weigh the merits of each motion independently). Cross motions for summary judgment do not require the court to decide the case on the merits. "[T]he court can deny both motions if both parties have failed to meet the burden of establishing that no genuine issues of material fact exist and that they are entitled to judgment as a matter of law." *In re Kogos*, 2010 Bankr. LEXIS 4079 at *9 (Bankr. N.D. Ill. Nov. 30, 2010); *see also Guard Ins. Group v. Reliable Ins. Servs., LLC, Shah Builders, & Carlos Quin De Hurtado*, 2018 U.S. Dist. LEXIS 237072 at *9 (E.D.N.Y. March 20, 2018) (denying both parties' motions for summary judgment); *Sosne v. FDIC*, 2016

U.S. Dist. LEXIS 24201 (E.D. Mo. Feb. 29, 2016) (same); *Ohio Cas. Ins. Co. v. Twin City Fire Ins. Co.*, 2018 U.S. Dist. LEXIS 234831 (E.D.N.Y. June 28, 2018) (same).

In an action to determine the dischargeability of a student loan debt pursuant to § 523(a)(8), the creditor has the initial burden to establish, by a preponderance of the evidence, the existence of the debt and that the debt is an educational loan within the statute's parameters. *In re Kashikar*, 567 B.R. 160, 168 (B.A.P. 9th Cir. 2017); *see also Grogan v. Garner*, 498 U.S. 279, 287 (1991). If this burden is met, the burden of production shifts to the debtor, while the creditor retains the ultimate burden of proof by a preponderance of the evidence. *Grogan*, 498 U.S. at 286.

## FACTS

From 2006 through 2008 Plaintiff attended medical school in Antigua and Barbuda. Decl. of Stephanie Mazloom ¶ 3, ECF No. 41. Plaintiff was accepted to the American University of Antigua/Kasturba Medical College Twinning Program. Decl. of Joseph Florczak, Ex. B, ECF No. 152-2. In August 2006, in order to finance the cost of her education, Plaintiff obtained a private student loan from Nellie Mae Bank in the amount of $38,400 ("Private Student Loan"). Defendants' Response to Plaintiff's Counter-Statement of Undisputed Material Facts 2, ECF No. 84. Nellie Mae Bank was one of the predecessors-in-interest to defendant Navient Solutions LLC, which has at all relevant times serviced the Private Student Loan. *Id.* This loan was made as a part of the EXCEL Grad Loan Program. Decl. of Patricia Peterson ¶ 4, ECF No. 56-2. As a part of the loan application process, Plaintiff signed a promissory note detailing the terms under which she received the Private Student Loan. *Id.* at Ex. A. The medical school listed on Plaintiff's loan application was Kasturba Medical College ("KMC"); the American University of Antigua ("AUA") was not listed on any part of this application. *Id.* It is undisputed that at the time Plaintiff received her loan, KMC was a Title IV institution. Decl. of Joseph Florczak, Ex. E, ECF No. 152-

5. Plaintiff signed this promissory note, which she acknowledged was "true, complete, and correct to the best of [her] knowledge and belief[.]" Decl. of Patricia Peterson, Ex. A at 9, ECF No. 56-2. Plaintiff later received a Truth-In-Lending statement ("TILA Statement"), which stated that the loan received by Plaintiff was to pay for an education from KMC, and that the Private Student Loan funds would be sent directly to KMC. Decl. of Stephanie Box, Ex. 1, ECF No. 151-1.

The promissory note included language stating that "EXCEL Grad Loans…are private education loans…that complement the Federal Stafford Loan program…" and that Plaintiff's "loan is an educational loan and is made under a program that includes Stafford Loans and other loans and which is funded in part by non-profit organizations, including governmental units, and, therefore, is not dischargeable in bankruptcy." Decl. of Patricia Peterson, Ex. A at 8, ECF No. 56-2. This language did not appear in any other internal or public documents produced by Defendants. Peterson Dep. 95:21-101:8, Aug. 5, 2022, ECF No. 140-5. It is uncontested that Navient provides both private loans and Stafford loans, and that Plaintiff's loan was funded entirely with private funds. Decl. of Patricia Peterson, Ex. A, ECF No. 56-2. While Defendants offer both loans, they utilize different applications, and provide differing interest rates and forgiveness provisions. Peterson Dep. 162:6-21, Aug. 5, 2022, ECF No. 140-5. Plaintiff did not receive a Stafford loan. Plaintiff's Counter-Statement of Undisputed Material Facts 1-2, ECF No. 85.

On February 21, 2018, Plaintiff filed a petition under Chapter 7 of the Bankruptcy Code. Decl. of Stephanie Mazloom ¶ 6, ECF No. 41. Plaintiff scheduled the Private Student Loan in the amount of $38,400, described it as a "student loan" and did not classify it as contingent, unliquidated or disputed. Plaintiff's Counter-Statement of Undisputed Material Facts 7, ECF No. 85. On June 4, 2018, this Court entered its order discharging all of Plaintiff's properly scheduled debts, excluding those generally excepted from discharge under § 523(a). *Id.* The Parties agree

that the EXCEL Grad Loan is a Private Student Loan. Plaintiff's Memorandum of Law in Opposition to Defendants' Initial Motion for Summary Judgment 2, ECF No. 86.

On June 10, 2020, Plaintiff requested that her Chapter 7 case be reopened to bring the current adversary proceeding against Defendants. *Id.* at 3. The Court granted the motion on June 24, 2020, and Plaintiff commenced this adversary proceeding on July 2, 2020. *Id.* Plaintiff's complaint does not allege that the Private Student Loan caused Plaintiff undue hardship. Rather, the Parties' Summary Judgment Motions now before the Court concern only whether the Private Student Loan is dischargeable pursuant to §§ 523(a)(8)(A)(i) and 523(a)(8)(B).

## **DISCUSSION**

Section 523(a)(8) restricts the dischargeability of "four categories of educational debt from discharge," namely: (i) educational benefit overpayments or loans made, insured, or guaranteed by a governmental unit; (ii) educational benefit overpayments or loans made under any program partially or fully funded by a governmental unit or nonprofit institution; (iii) funds received as an educational benefit, scholarship or stipend; or (iv) qualified educational loans as defined in § 221(d)(1) of the Internal Revenue Code. *In re Golden*, 596 B.R. 239, 257 (Bankr. E.D.N.Y. 2019). Section 523(a)(8) is written in the disjunctive, meaning a loan need only fall within one of these four categories to be non-dischargeable. The previous cross-motions for summary judgment addressed only § 523(a)(8)(A)(i). Following additional discovery by the parties, the renewed motions make additional arguments under subsection (A)(i), as well as arguments under § 523(a)(8)(B). The Court will first address the Parties' arguments under § 523(a)(8)(A)(i) before turning to § 523(a)(8)(B).

**Section 523(a)(8)(A)(i)**:

Section 523(a)(8)(A)(i) excepts from discharge "an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution." Defendants assert that the loan issued to Plaintiff is excepted from discharge under § 523(a)(8)(A)(i) because the Private Student Loan was made under a program that offers both the EXCEL Grad Loan Program and federal Stafford loans. It is uncontested that the Private Student Loan was made for the purpose of financing Plaintiff's attendance at medical school, and thus was an educational loan within the meaning of § 523(a)(8)(A)(i). For purposes of this subsection, it is not relevant whether the medical school in question was a Title IV school. For Defendants to prevail on a motion for summary judgment, however, they must also establish that the Private Student Loan was made under a program funded in part by a governmental unit.

Because the primary purpose of the bankruptcy discharge is to provide a fresh start to the honest but unfortunate debtor, courts have long recognized that exceptions to discharge, including § 523(a)(8)(A)(i), must be narrowly construed against the creditor. *In re Campbell*, 547 B.R. 49, 54 (Bankr. E.D.N.Y. 2016) (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998)). It is also widely accepted that the purpose of § 523(a)(8) is to "preserve the financial integrity of educational loan programs." *In re Hammarstrom*, 95 B.R. 160, 163 (Bankr. N.D. Cal. 1989). To accomplish this goal, § 523(a)(8) limits "the instances in which such [student loan] obligations can be discharged in bankruptcy." *Id.* (citing 124 Cong. Rec. 1791-2 (1978) (statement of Rep. Allen Ertel)). As stated by another court, "[t]he legislative history clearly bears out that the broad purpose of the provision was 'to keep our student loan programs intact.'" *In re Karben*, 201 B.R. 681, 684 (Bankr. S.D.N.Y. 1996) (citing 124 Cong. Rec. 1791-2 (1978) (statement of Rep. Ertel)). More

specifically, Congress was concerned with "safeguarding the financial integrity of governmental entities and nonprofit institutions that participate in educational loan programs." 4 Collier on Bankruptcy ¶ 523.14[1] (Richard Levin & Henry J. Sommer eds., 16th ed.). This Court is mindful of these underlying purposes of § 523(a)(8) when evaluating both Parties' Motions for Summary Judgment.

Defendants fail in their motion for summary judgment on essentially the same grounds as in their previous motion. As articulated in the Court's previous decision, Defendants are entirely reliant on the boilerplate language of the promissory note, coupled with the self-serving statements of Patricia Peterson to bolster the notion that the Private Student Loan was made as part of an unnamed program funded in whole or part by a governmental unit. Despite seemingly exhaustive discovery conducted by the parties since the Court's previous decision, Defendants have returned with the same arguments as their initial motion. Defendants state that "the testimony of Navient employee Patty Peterson, [and] the promissory notes in the Excel Grad Loan program contained substantially identical disclosures regarding it being part of a broader program including Stafford loans from 2003 until the termination of the Excel Grad Loan program in 2008." Defendants' Cross-Motion 16, ECF No. 150. This is the same tautological reasoning that the Court found unpersuasive in the past, and it carries no greater weight today. The failure to bring forward any additional documentation that could substantiate the existence of a named program that included both the EXCEL Grad Loans and Stafford loans is particularly damaging to Defendants' position given the substantial discovery conducted in search of that exact evidence.

Defendants not only rely on the same evidence as they did in their initial motion for summary judgment, they continue to cite to cases the Court explicitly distinguished as uncompelling in its previous decision. More specifically, Defendants spend considerable time in

their briefs drawing comparisons between the current matter before the Court and both *Mader v. Experian Info. Sols., LLC*, 2020 U.S. Dist. LEXIS 132073 (S.D.N.Y. July 24, 2020) and *In re Drumm*, 329 B.R. 23 (Bankr. W.D. Pa. 2005). Defendants do not use these cases to craft new arguments, but instead disregard the past pronouncements of this Court in the hopes that the same old approach will somehow yield different results. This is a forlorn hope. These cases remain inapposite in the present case. Not only that, in the intervening period the Second Circuit held that the district court's reliance on the declaration of Ms. Peterson as sufficient grounds to grant summary judgment to Defendants in the *Mader* case was in error. *Mader v. Experian Info. Sols., LLC*, 2023 U.S. App. LEXIS 79 at *8 (2d Cir. Jan. 4, 2023). Given the lack of additional, relevant evidence or caselaw from Defendants, their motion for summary judgment must, once again, be denied.

Turning to Plaintiff's motion for summary judgment, Plaintiff again seeks a determination that the Private Student Loan was not funded, even in part, by a governmental unit as required by the terms of § 523(a)(8)(A)(i). In order to prevail, Plaintiff must establish that there is an absence of evidence supporting a necessary element of Defendants' argument. In this instance, that necessary element is the existence of the broader program which allegedly included both the Private Student Loan and federal Stafford loans.

Other courts around the country have accepted a broad range of evidence to establish that a particular loan was made under a program funded in whole or in part by a non-profit or governmental unit. The Second Circuit has articulated the standard that the non-profit or governmental unit must have made "any meaningful contribution" to the program to satisfy § 523(a)(8)(A)(i). *In re O'Brien*, 419 F.3d 104, 105 (2d Cir. 2005). In *O'Brien*, it was sufficient that the non-profit had guaranteed the loans, which meant it "was clearly devoting some of its financial

resources to supporting the program." *Id.* at 106. As with *O'Brien*, whenever a court has found a program in existence that comports with the requirements of § 523(a)(8)(A)(i), there exists a concrete relationship between the private loan and the non-profit or governmental unit that is demonstrable from evidence other than self-serving statements from the loan provider as to the existence of the program. *See, e.g.*, *In re Jean Baptiste*, 584 B.R. 574 (Bankr. E.D.N.Y. 2018) (formal, written, and legally binding Loan Sale Agreement between private loan provider and non-profit sufficient proof of funded program); *In re Taratuska*, 2008 U.S. Dist. LEXIS 93206 at *17-18 (D. Mass. August 25, 2008) (finding § 523(a)(8)(A)(i) requirement to be met where the non-profit maintained money in segregated reserves to support its guaranty obligations, thus devoting financial resources to the loan program); *In re Medina*, 2020 Bankr. LEXIS 2459 at *10-11 (Bankr. S.D. Cal. 2020) (finding guaranty critical to program due to fact that loans would not have been made but for non-profit's guaranty to purchase defaulted loans, such that non-profit acted as *sine qua non* of program). For Plaintiff to prevail at this stage, they must establish that no such concrete relationship existed at the time the Private Student Loan was made.

Plaintiff's previous motion for summary judgment, while legally sound, was undermined by an incomplete factual record. Plaintiff was overly reliant on a 2014 Prospectus from Defendants that did nothing to inform the Court of the situation in 2006 when Plaintiff received her loan. Additionally, while the documentation available at that time did nothing to support the existence of the broader program as argued by Defendants, there was simply too little in the record to allow the Court to conclude that there was no genuine dispute as to the material facts. Plaintiff has since performed extensive discovery in an effort to fill the gaps in the record and to demonstrate conclusively that Defendants' purported program was nothing more than a fiction. To this end, Plaintiff requested, "[a]ll Documents, whenever created, relating to the creation, funding,

modification or implementation of the 'program' described in Plaintiff's promissory note," as well as documents related to the EXCEL Grad Loan Program and the promissory note itself. Plaintiff's Motion for Summary Judgment, Ex. A, ECF No. 140-3. Plaintiff also conducted an additional deposition of Patricia Peterson, an executive with Defendants, to discuss these newly discovered documents as they related to the program in question. The result of this process reveals that the unnamed 'broader program' exists only as a sentence in a promissory note meant to protect Defendants debt from being discharged in bankruptcy. Put simply, Defendants' broader program does not exist.

The language in the promissory note upon which Defendants heavily rely states, in pertinent part:

> 'I understand that this loan is an educational loan and is made under a program that includes Stafford Loans and other loans and which is funded in part by non-profit organizations, including governmental units and, therefore, is not dischargeable in bankruptcy[.]'

Defendants' Motion for Summary Judgment, Peterson Decl., Ex. A, ECF No. 56-3. Throughout every document provided by Defendants, this is the sole reference made to the broader program upon which Defendants' entire argument rests. Furthermore, Defendants' own longstanding executive, Patty Peterson, was unable to point to any documents that included this language apart from the promissory notes. Peterson Dep. 95:21-101:8, Aug. 5, 2022, ECF No. 140-5. When asked how she would determine if a loan offered by Defendants was a part of the broader program or not, Ms. Peterson was unable to provide any means of determining this apart from checking for the boilerplate language in the promissory note. Id. at 196:16-197:15. Nor could Ms. Peterson name a single document released to the public that included any mention of the broader program or included the language from Plaintiff's promissory note. *Id.* at 332:9-22. This includes legal disclosures provided to the government, including SEC filings. *Id.* at 41:12-43:4. Ms. Peterson

acknowledged that loans within the EXCEL Grad Loan Program were not governed by federal regulations under the Higher Education Act of 1965, given that loans within that program were entirely private. *Id.* at 335:1-18.

In the absence of any substantial and verifiable relationship between the private loans offered by Defendants and the Stafford loans that allegedly existed under the purported broader program, counsel for Plaintiff attempted to define exactly what Defendants believe had brought this umbrella program into existence. In the latest deposition of Ms. Peterson, counsel and the witness had the following exchange:

> Q: It's your testimony that the broader program, as you defined it, exists in this point in time because Nellie Mae is offering this EXCEL loan and is also offering Stafford and PLUS loans, is that your testimony?
> A: Yes…the idea is for them to get one stop for all of their financing needs.

*Id.* at 113:6-14. This notion of 'one stop shopping' is fundamentally insufficient to create a program as that term is used in § 523(a)(8)(A)(i). The idea that any company could sell two products contemporaneously, without any additional benefit or synergistic effect from their combined purchase, and use that fact alone to treat the two as a package deal would eviscerate the concept of a package deal. This is the exact concern voiced by the Second Circuit in both its *Homaidan* and more recent *Mader* decisions, and a concern voiced by this very Court in its prior decision. Defendants' understanding of the term program would draw "virtually all student loans within [its] scope….transforming section 523(a)(8) into a catch-all for educational loans." *Mader v. Experian Info. Sols., LLC*, 2023 U.S. App. LEXIS 79 at *8 (2d Cir. Jan. 4, 2023) (quoting *Homaidan v. Sallie Mae, Inc.*, 3 F.4th 595, 602 (2d Cir. 2021)). EXCEL Grad Loans and Stafford loans have different applications, have different eligibility requirements, have different interest rates, and contain different forgiveness provisions. Peterson Dep. 162:6-21, Aug. 5, 2022, ECF No. 140-5. While Defendants 'encourage' applicants to first maximize their Stafford loans before

receiving EXCEL Grad Loans, there is no requirement that applicants do so before receiving EXCEL Grad Loans. *Id.* at 62:3-15. When asked to point to language in any document that speaks to the existence of the broader program apart from the language in the promissory note, Ms. Peterson could point to nothing more than the platitudinous language about the benefits of one-stop shopping. *Id.* at 225:14-227:12. While programs such as the EXCEL Grad Loan Program are governed by specific documents and can be found listed on internal documents collecting all private loan programs offered by Defendants, there exist no corresponding documents for this unnamed broader program. *Id.* at 124:14-125:23.

Defendants, in an effort to evade the debtor's discharge, placed boilerplate language into their promissory notes claiming that their private loans were a part of a broader program that also offered federal Stafford loans. Defendants did nothing else to bring this broader program into existence. Its contents cannot be identified without use of the promissory note, it is not referenced in either internal or public documents, and there are no practical benefits or effects of any kind to obtaining both loans in the alleged program. It exists solely in the promissory note and for a single purpose: to prevent the discharge of debts pursuant to § 523(a)(8)(A)(i). This is not enough to satisfy the meaning of the term program as used in that section. Such an understanding of the term program would turn § 523(a)(8)(A)(i) into a catch-all for student loans, vitiating the other subsections of § 523(a)(8). Because Plaintiff has shown an absence of evidence supporting an essential element of Defendants' claim, namely that the Private Student Loan was made as a part of a program funded in whole or part by a governmental unit, Plaintiff's motion for summary judgment is granted with regard to § 523(a)(8)(A)(i).

**Section 523(a)(8)(B)**:

In addition to the above, both parties have also moved for summary judgment to determine whether the Private Student Loan is excepted from discharge pursuant to § 523(a)(8)(B). Establishing the contours of this Code section first requires delving into a nesting doll of statutory definitions. Section 523(a)(8)(B) excepts from discharge, "[A]ny other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual[.]" 11 U.S.C. § 523(a)(8)(B). Section 221(d)(1) in turn defines a 'qualified education loan' as "any indebtedness incurred by the taxpayer solely to pay qualified higher education expenses." 26 U.S.C. § 221(d)(1). Section 221(d)(1) further defines 'qualified higher education expenses,' in relevant part, as "the cost of attendance (as defined in section 472 of the Higher Education Act of 1965…) at an eligible educational institution, reduced by the sum of" other applicable financial aid. *Id.* Finally, an 'eligible education institution' is treated by § 221(d)(1) as having the same meaning as in 26 U.S.C. § 25A(f)(2), which defines the term as an institution "which is eligible to participate in a program under title IV of [the Higher Education Act of 1965.]" 26 U.S.C. § 25A(f)(2). Put more succinctly, the Court must determine if either party has established whether the Private Student Loan was incurred to pay a qualified education expense. If Defendants are correct that the Private Student Loan was incurred for this purpose, then Plaintiff's debt will be held to be non-dischargeable.

Both Parties agree that the 'purpose test,' also known as the 'substance of the transaction test,' governs in this case. This test, which has been adopted by a number of circuit courts throughout the nation, holds that the proper analysis in a § 523(a)(8)(B) case is to look at the initial purpose of the loan, rather than the actual use of the funds, to establish the purpose of the loan. *See, e.g.*, *Conti v. Arrowood Indem. Co. (In re Conti)*, 982 F.3d 445 (6th Cir. 2020); *Busson-*

*Sokolik v. Milwaukee Sch. of Eng'g (In re Busson-Sokolik)*, 635 F.3d 261 (7th Cir. 2011). The parties agree on the operative facts in this case, but dispute the application of the purpose test to those facts. Plaintiff would have the Court apply the purpose test at a high level of generality, arguing the purpose here should be read as 'educational' only, and that the Court should then look beyond the stated purpose to the actual use to determine the more specific purpose. To that end, that more specific purpose would be an education at a non-Title IV university, AUA. Defendants, however, argue that the purpose test should be applied with a high degree of specificity from the outset, thus obviating any need for the Court to look beyond the initial agreement between the Parties. Here, that specific purpose would not be merely an 'education,' but rather 'the cost of attendance at Kasturba Medical College,' as stated in the promissory note signed by Plaintiff and the Truth-in-Lending Statement she received. The Court believes that the bright-line approach advocated by Defendants is most consistent with the statutory language of § 523(a)(8)(B), more in keeping with the Congressional purposes of the Code, and consistent with the approach taken by bankruptcy courts nationwide. Accordingly, for the reasons discussed below, the Court adopts this rule here, and will look only to the specific initial purpose of the loan to determine whether a debtor's loans fall within the scope of § 523(a)(8)(B).

The plain text of § 523(a)(8)(B) requires looking to the stated purpose of the loan at the time of the agreement, rather than supplementing the stated purpose with ancillary information from the debtor's use of the loan funds. The Court must determine whether the Private Student Loan is a loan that was "incurred…to pay" higher education expenses, which speaks to the terms of the contract at the moment the agreement was struck, not informed by subsequent choices made after the signing of the promissory note. 26 U.S.C. § 221(d)(1); *see also Conti*, 982 F.3d at 449.

While the plain text alone is enough to support the Court's application of the purpose test, it is also the case that Plaintiff's construction of § 523(a)(8)(B) would run counter to the legislative purpose of this Code section. The central aim of the bankruptcy system is to provide a discharge procedure that allows the honest but unfortunate debtor to enjoy "a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Grogan v. Garner*, 498 U.S. 279, 286 (1991). This aim, however, is in limited circumstances outweighed by matters of public policy, including concerns about the availability and solvency of educational loan programs. *Andrews Univ. v. Merchant (In re Merchant)*, 958 F.2d 738, 740 (6th Cir. 1992). If a student such as Plaintiff could receive a loan with the stated purpose of attending a Title IV institution, and then use those funds at a non-Title IV school instead, thus transforming the debt from non-dischargeable to dischargeable, lender confidence would plummet, and the solvency of the student loan system would be threatened.

The bright-line rule adopted by the Court today also has the advantage of not requiring lenders to make decisions about whether to lend to prospective students based upon that student's unknown future behavior. If, as Plaintiff argues, the purpose of a loan could be divined not just from the language at the time of the agreement, but from subsequent actions by the debtor, then the purpose of the loan would not be determinable at the time the agreement was made. In the present case, while the signed note states KMC, Plaintiff believes that her actions after making this agreement in attending AUA should alter that purpose.

This would undermine lender confidence in issuing loans, and could lead to an increase in the fees imposed by lenders to cover the additional risk, which would in turn further burden the federal government as the guarantor for many of these loans. Applying the purpose test to the

specific terms of the agreement between the parties ensures the agreement between the parties is honored and not subjected to future, unknown factors.

Finally, this bright-line rule is more consistent with the application of the purpose test made by other courts and prevents arbitrary application on a case-by-case basis. Plaintiff attempts to muddy the waters by pointing out that, in many of the leading cases applying the purpose test, "there was no factual dispute that plaintiff had in fact attended a Title IV school[.]" Plaintiff's Reply Memorandum 8, ECF No. 155. Plaintiff argues that because the purpose test was not being applied to the identical issue of the specific school attended by debtor in these cases, they are of no use in the present matter. For example, in *Murphy v. Pa. Higher Educ. Assistance Agency (In re Murphy)*, 282 F.3d 868 (5th Cir. 2002), the parties agreed that the debtor attended a Title IV institution, and the dispute centered on whether the term 'educational' included expenses such as room and board. Plaintiff is correct that the court in *Murphy* did not need to use the purpose test to determine that the loans were made to attend a specific institution, but merely to discern that the loans were educational because they were made to a qualifying institution, that is, a Title IV school. This, however, does nothing to support the contention that the purpose test is somehow limited to establishing that loans were made for educational purposes, and thus cannot be used to determine the exact institution for which the debtor procured the loan. Had that more specific issue been in doubt in *Murphy*, there is no indication that the court would not have used the purpose test to determine the exact institution. Plaintiff attempts to use this same flawed reasoning to discount the application of the purpose test in *Conti v. Arrowood Indem. Co. (In re Conti)*, 982 F.3d 445 (6th Cir. 2020), and *Monyak v. Navient Sols., LLC*, 2021 Bankr. LEXIS 239* (Bankr. D. Ohio Feb. 2, 2021), with similarly unpersuasive results. Even if the caselaw supported such an interpretation of the purpose test, to adopt this approach would inevitably lead to inconsistent outcomes among

19

different courts. Plaintiff here would like the Court to use the purpose test solely to determine that the loan is 'educational' in nature, and then look at the facts as they developed after the agreement. But Plaintiff provides no reasons why using the purpose test only to determine if a loan is educational is better than using the purpose test to determine if a loan was for a 'qualified educational purpose.' Plaintiff simply proposes an ad hoc level of generality that suits her position in this case, without considering its application in different circumstances. Using the purpose test to establish the specific purpose of the loan, rather than any abstract and generalized purpose, avoids this pitfall while conserving judicial time and resources.

Applying this straightforward test to the present facts, it is incontrovertible that the Private Student Loan was incurred to cover the qualified education expenses of Plaintiff, and so constitutes a non-dischargeable debt under § 523(a)(8)(B). The Parties do not dispute that KMC was a Title IV institution at the time Plaintiff incurred the Private Student Loan. Decl. of Joseph Florczak, Ex. E, ECF No. 152-5. Nor does Plaintiff dispute that she signed the promissory note, acknowledging that the information within was true and correct to her knowledge. Plaintiff's Response to Defendants' Statement of Undisputed Material Facts, ECF No. 85. Additionally, the TILA Statement makes clear that the Private Student Loan funds were sent directly to KMC. Decl. of Stephanie Box, Ex. 1, ECF No. 151-1. Plaintiff posits the theory that because part of the loan application paperwork was completed by an employee of KMC, Severine Barrie, this absolves Plaintiff of responsibility for the dispute as to which school she attended, and instead gives rise to a potential legal claim by Defendants against KMC and AUA. While the Court does not have an opinion on any aspect of the legal relationship between Defendants and the educational institutions in question, it is the case that school certifications such as the one found in the record are routine, and do not alter Plaintiff's responsibility under the terms promissory note. Decl. of Patricia

Peterson, Ex. B, ECF No. 56-2; *see, e.g.*, *Monyak*, 2021 Bankr. LEXIS at *3-4. The Nellie Mae

Loan Certification completed by Ms. Barrie is unavailing in light of the language of the promissory

note, which named KMC as the school for which Plaintiff sought the loan and in which Plaintiff

acknowledged the information she provided was, "true, complete, and correct to the best of [her]

knowledge and belief[.]" Decl. of Patricia Peterson, Ex. A at 9, ECF No. 56-2. Any arguments that

this language in the promissory note is mere boilerplate language akin to the statement about the

'broader program' discussed above is based on a faulty analogy. That 'broader program' language

was the same in every promissory note and not based upon any facts specific to the applicant and

their loan. Meanwhile, the exact school for which Plaintiff sought her loan, KMC and not AUA,

was specifically tailored to her application. Furthermore, after receiving approval of the loan for

KMC, Plaintiff received the "TILA Statement" which unambiguously stated that the loan received

by Plaintiff was to pay for an education from KMC. Decl. of Stephanie Box, Ex. 1, ECF No. 151-

1. The TILA Statement also stated that the funds for the Private Student Loan would be paid

directly to KMC. *Id.* Plaintiff had numerous indicators that the loan she received was for the

purpose of attending KMC, both within the promissory note, and throughout additional materials

she received after submitting her loan application. The letter advising Plaintiff of her acceptance

to medical school contained the letterhead of both AUA and KMC and stated clearly that Plaintiff

was accepted to the "American University of Antigua/Kasturba Medical College Twinning

Program." Decl. of Joseph Florczak, Ex. B, ECF No. 152-2. Plaintiff's 'Financial Aid Eligibility

Notice' similarly referenced the Twinning Program between the two schools. Decl. of Joseph

Florczak, Ex. C, ECF No. 152-3. The paperwork completed or received by Plaintiff prior to her

matriculation was replete with references to KMC, and make clear that the purpose of Plaintiff's

loan was to attend KMC.

Counsel for Plaintiff argued at the hearing that to expect Plaintiff, a first-year medical student, to "undertake a full inquiry of the scope of the bankruptcy laws and the concept of Title IV, and whether the school she's going to is properly identified as Kasturba or AUA" is an unreasonably high bar, and so Plaintiff should be excused from her agreement to the terms of the promissory note and the language of the TILA Statement. Hearing on Renewed Motions for Summary Judgment 59:3-18, Oct. 25, 2022, ECF No. 164. The extent of Plaintiff's obligation, however, is not so onerous as her counsel would make it seem. There was no requirement to conduct any research into bankruptcy law at the time the loan was taken, nor even to investigate the relevance of the Title IV designation. All that was required of Plaintiff was that she have knowledge of the purpose for which the loan was incurred. If Plaintiff now says that she failed to meet this minimal requirement, it does not require, or even permit, the Court to excuse her of her obligations under the promissory note. Plaintiff is bound by her representations as to the clear intended purpose for which she received the Private Student Loan. Defendants have shown that there is no genuine issue of material fact in their Motion for Summary Judgment as to § 523(a)(8)(B), as Plaintiff's loan was a qualified education loan as defined in section 221(d)(1) of the Internal Revenue Code of 1986. Consequently, Defendants' Motion for Summary Judgment is granted as to the claim under § 523(a)(8)(B).

## **CONCLUSION**

For the forgoing reasons, the Court grants Plaintiff's motion for summary judgment as to the first claim for relief under § 523(a)(8)(A)(i) and denies Plaintiff's motion for summary judgment as to the second claim for relief under § 523(a)(8)(B). The Court likewise denies Defendants' motion for summary judgment as to the claim for relief under § 523(a)(8)(A)(i) and

grants Defendants' motion for summary judgment as to the second claim for relief under § 523(a)(8)(B).

Accordingly, it is hereby

ORDERED, that Defendants Navient Solutions LLC's and Navient Credit Finance Corporation's Initial Motion for Summary Judgment is Denied in part and Granted in part; and it is further

ORDERED, that Plaintiff Stephanie Mazloom's Motion for Summary Judgment is Denied in part and Granted in part; and it is further

ORDERED, that Plaintiff Stephanie Mazloom's Private Student Loan is a non-dischargeable debt, pursuant to 11 U.S.C. § 523(a)(8)(B), and it is further

ORDERED, that the Parties are directed to appear at a conference to consider remaining pending matters in this case, if any, on January 31st, 2023, at 1:00 in the afternoon.

###